David SEIGAL and Ethel Seigal, Plaintiffs,

v.

David MERRICK et al., Defendants.

Harry GEHLER, Plaintiff,

v.

William R. HEARST, Jr., et al., Defendants.

Nos. 74 Civ. 2475 and 74 Civ. 2630.

United States District Court,
S. D. New York.

Oct. 26, 1977.

See, also, 422 F.Supp. 1213.

Gold, Farrell & Marks by Martin R. Gold, Leonard M. Marks, New York City, Lead Trial Counsel for plaintiffs.

Levy & Levy by Morris Levy, New York City, for plaintiff Harry Gehler.

Nemser & Nemser by Stanley Nemser, New York City, for plaintiffs Berkowitz, et al. (in a related New York State action).

Rosenman, Colin, Freund, Lewis & Cohen by Max Freund, Joseph Zuckerman, New York City, for defendant Twentieth Century-Fox Film Corp.

Skadden, Arps, Slate, Meagher & Flom by Robert W. Sweet, Peggy L. Kerr, Timothy A. Nelsen, James E. Lyons, New York City, for defendant Directors.

David Merrick, pro se.

Norman Annenberg by Norman Annenberg, Griff DeNoyelles, Jr., New York City, for objector Koby.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CONSTANCE BAKER MOTLEY, District Judge.

These consolidated cases are shareholder derivative suits on behalf of Twentieth Century-Fox Film Corporation (Fox). The complaints contain allegations of, *inter alia*, violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, as well as breach of fiduciary duty and waste and mismanagement of corporate assets by David Merrick and certain present and former officers and directors (defendant-directors) of Fox. The suspect actions of the defendant-directors included 1) Fox's tender offer for at least 2,000,000 shares in 1974; 2) the filing of a lawsuit by Fox in this court in 1974; and 3) the 1974 purchase by Fox from Merrick of 747,900 shares of Fox stock for the sum of $2,400,000 above the then market price of the stock.

Plaintiffs alleged that the purpose of these three transactions was to protect the positions and personal interests of the defendant-directors. These actions were set for trial on February 14, 1977.

On February 10, 1977 the parties in these consolidated actions signed a Stipulation of Settlement (Stipulation) (attached hereto as Appendix A) which would have terminated the actions if approved by the court. Notice of the proposed settlement was duly mailed to the shareholders of Fox. Rule 23.1, Fed.R.Civ.P.

The terms of the Stipulation which are at issue are essentially the following: The defendant-directors are to pay $1,138,500 to Fox. Upon receipt of $1,062,500 of this sum, Fox is to issue 425,000 "rights" to the defendant-directors to divide among themselves as they choose. Each of these rights may be converted into one share of Fox stock and may be exercised at a price of $13.25. There are numerous restrictions and provisions regarding the rights. The most important are that the rights cannot be exercised for one year after the settlement is approved by the court but can be exercised for a period of three years after the one year hiatus. There is also a provision restricting the sale of the underlying stock after the exercise of the rights.[1]

The settlement, of course, provides for the termination of the instant lawsuits, but

---

1. The proponents claim, and have so stipulated at the hearing, that the Stipulation prohibits the subsequent sale of the stock for a period of one year after the rights have been exercised. The opponent disputes this interpretation of the Stipulation and further adds that any ambiguity in that document cannot now be remedied by a stipulation among the proponents. Since the court disapproves the Stipulation of Settlement, this controversy need not be resolved.

also provides for the settlement of related state court actions and a claim by David Merrick against Fox.

On May 13, 1977 a Fox shareholder, Muriel Koby, filed a "Notice of Intention to Object to Proposed Compromise and Settlement". A preliminary hearing on the fairness of the settlement was held on May 23, 1977. At a subsequent hearing on June 27, 1977 the issues to be tried regarding the settlement were formulated. The questions of fact to be tried were: 1) the value as of February 10, 1977 of the stock rights to be transferred to the defendant-directors under the settlement; 2) whether there would be any compensation going to Fox for these rights, or whether the purported compensation is, in fact, illusory; and 3) whether there was any fraud with respect to the valuation of the rights and the compensation going to the corporation in that certain information regarding the spectacular success of the motion picture *Star Wars* or other matters was withheld from the shareholders at the time the settlement agreement was entered into.

The legal issues to be decided by the court were: 1) whether the use of Fox's treasury stock to satisfy the exercise of the stock rights violated the preemptive rights of Fox's shareholders; 2) whether the "Notice of Settlement Hearing" to the Fox shareholders was adequate; and 3) what effect *Green v. Santa Fe Industries, Inc.*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977) would have had on the merits of these actions. These issues were litigated on October 11, 12, 13, and 14.

The court now makes the following findings of fact and conclusions of law based on the documents related to the settlement submitted by all parties (including affidavits attached to the proponents' and objector's papers and all attached exhibits) and based upon the evidence elicited at the October hearing.

2. The total sum of cash to be paid to Fox was $1,138,500. The rights were to be issued on receipt of $1,062,500 (425,000 rights times

*Findings of Fact*

1. Fox has conceded, and this concession has not been challenged by any other proponent of the settlement, that the Stipulation would not be fair to Fox if viewed from the point of view of the present time since the value of the Fox stock has more than doubled from its February 10th price of 11 and ⅜.

2. All the proponents argue that as of February 10, 1977, the day the Stipulation was signed, it was a fair and reasonable settlement of the lawsuits.

3. Although the directors purported to pay $.80 as the predetermined value for each stock right to be received under the settlement (with the remaining $1.70 per right going to the cost of the settlement itself),[2] the court, relying on the testimony of the objector's expert, Colman Abbe, finds that each right was worth approximately $3.50 as of February 10, 1977 based on information then available to the public.

A fundamental difference between the valuation theory of Abbe and the valuation theory of the proponents' expert, Stanley S. Shuman, is that they measured the value of these rights from different points of view. Abbe ascribed $3.50 as the value of these rights to the *actual* recipients, mainly John L. Vogelstein who was to receive 376,800 of the 425,000 rights. Schuman said the *open market* value of the rights was approximately $.80. Thus the court is called upon to decide which is the correct valuation theory as a matter of law. A large part of the disparity in the valuations may be explained by the fact that restrictions in the free transfer of the rights would lower their value in the eyes of the buyer in a free market, whereas the restrictions would mean little to Vogelstein since the evidence shows that he had been interested in accumulating shares of Fox stock for a period of time prior to February 10, 1977 and would, presumably, not be interested in transferring his rights anyway.

$2.50), and an additional $76,000 was to be paid in settlement of the action.

The court finds that the value should be the actual value to the actual recipients, not the value in a theoretical open market for such rights. The stock rights transaction is a "closed" one in the sense that none of these rights has or apparently ever will be offered to the public or other shareholders of Fox. Furthermore, from the point of view of the benefits to Fox, the value of the rights should be the value to the actual recipients since, in fairness to Fox and its shareholders, Fox should be receiving as much for these rights as it can legitimately get from the actual buyers. The directors could not buy these rights from anyone in an open market, only from Fox. There is thus no reason why the rights should be based on a theoretical "open market" value when such an open market does not exist.

4. Thus, the defendant-directors received 425,000 stock rights valued at approximately $3.50 each for a total value of $1,487,500 (425,000 × $3.50). In return, the corporation was to receive a total cash payment of $1,138,500. The substance of the settlement was that Fox would therefore be receiving nothing for settling the lawsuits but would, realistically, be paying the defendant-directors $349,000 ($1,487,500 less $1,138,500) to settle the actions.

5. The court, therefore, finds that the Stipulation as of February 10, 1977 was not fair and reasonable to Fox.

6. The court finds that none of the parties had access to any inside information of Fox with respect to the relatively unprecedented success of the motion picture *Star Wars* or any other phase of Fox's business when they entered into the stipulation which would lead them to believe that the rights were worth more than $.80 apiece based on such information. Thus, there was no proof of fraud with respect to the valuation of the rights and the compensation going to the corporation based on such inside information as claimed by the objector.

*Conclusions of Law*

1. The Stipulation of Settlement signed on February 10, 1977 is not fair and reasonable or in the best interests of Fox and its shareholders. The stipulation must, therefore, be disapproved by this court. *Levin v. Mississippi River Corporation*, 59 F.R.D. 353, 361 (S.D.N.Y.), aff'd sub nom. *Wesson v. Mississippi River Corporation*, 486 F.2d 1398 (2d Cir.), *cert. denied*, 414 U.S. 1112, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973).

2. Since the court finds that the Stipulation was not fair based on the value of the rights on February 10, 1977, the court finds it unnecessary to rule on the other legal questions with respect to the Stipulation of Settlement.

There will be a pre-trial conference on Friday, November 11, 1977 at 11:30 A.M. in Courtroom 905 for the purpose of rescheduling the trial date for these actions.

SO ORDERED.

## APPENDIX A

### STIPULATION OF SETTLEMENT

WHEREAS, the above actions entitled *Seigal v. Merrick, et al.* (the "*Seigal* action") and *Gehler v. Hearst, et al.* (the "*Gehler* action") are actions brought by plaintiffs as stockholders of Twentieth Century-Fox Film Corporation ("Fox") derivatively for and on behalf of Fox and against certain present and former members of the Board of Directors of Fox (the "defendant-directors") and David Merrick ("Merrick"); and

WHEREAS, by order entered March 12, 1976 the Court determined and ordered that the *Seigal* and *Gehler* actions be consolidated for all purposes; and

WHEREAS, the complaints in the *Seigal* and *Gehler* actions, have, by order of this Court, been deemed to have been supplemented and amended to conform to plaintiffs' contentions contained in Plaintiffs' Trial Memorandum dated November 12, 1976 and the Pre-Trial Order dated January 19, 1977, and, as so supplemented and amended, contain allegations of, *inter alia*, violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, breach of fiduciary

duty and waste and mismanagement of corporate assets by the defendant-directors and Merrick in connection with (1) Fox's tender offer, announced on February 28, 1974, for at least 2,000,000 shares of its outstanding stock, (2) the authorization and filing on April 24, 1974 of the action entitled *Twentieth Century-Fox Film Corp. v. Merrick, et al.*, 74 Civ. 1823 (S.D.N.Y.), and (3) the May 23, 1974 purchase by Fox from Merrick of 747,900 shares of Fox stock for $6,750,000 (hereinafter the complaints as supplemented and amended are referred to as the "Complaints"); and

WHEREAS, all the individual defendants in the *Seigal* and *Gehler* actions have denied all allegations of wrongdoing contained in the Complaints and have demanded judgment on the merits dismissing the Complaints; and

WHEREAS, defendant Fox, the party upon whose behalf the *Seigal* and *Gehler* actions have been brought, has denied all allegations of wrongdoing on its part or on the part of the defendant-directors as alleged in the Complaints and has prayed that an appropriate judgment be entered; and

WHEREAS, lead trial counsel for plaintiffs have conducted an extensive investigation relative to plaintiffs' claims and the underlying events and transactions involved in the Complaints, including taking the deposition testimony of John P. Edmondson, Jerome Edwards, Donald N. Frey, William T. Gossett, F. Warren Hellman, H. Blackmer Johnson, John H. Johnson, Ralph F. Lewis, Malcolm A. MacIntyre, Harry J. McIntyre, David Merrick, John T. Pollock, Dennis C. Stanfill, Gordon Stulberg, Gerald A. Trautman, and John L. Vogelstein and questioning the deponents with respect to several hundred documents, and have made a thorough study of the legal principles applicable thereto, and believe that the *Seigal* and *Gehler* actions are ready for trial; and

WHEREAS, plaintiffs in the *Seigal* and *Gehler* actions desire to settle such actions on the terms and conditions hereinafter set forth and deem such settlement to be fair, reasonable and adequate and in the best interests of Fox and its shareholders; and

WHEREAS, defendants, while continuing to deny all allegations of wrongdoing, nevertheless desire to settle, compromise and terminate the *Seigal* and *Gehler* actions so as to avoid further substantial expenses and inconvenience and the distraction of burdensome, protracted litigation and to put to rest all claims which have been, could have been or might in the future be asserted (either directly or derivatively) arising from or in any way related to the matters alleged in the Complaints;

NOW, THEREFORE, IT IS STIPULATED AND AGREED, by and among the undersigned, subject to the approval of the Court, that the *Seigal* and *Gehler* actions and all of the claims and causes of action of any nature or description which have been, could have been or might in the future be asserted (either directly or derivatively), arising out of or in any way related to the actions or transactions alleged in the Complaints, are hereby compromised and settled on the terms and conditions hereinafter set forth and that the *Seigal* and *Gehler* actions shall be dismissed on the merits with prejudice on the conditions set forth herein:

1. Upon final approval of this Stipulation of Settlement (the "Stipulation"), as defined in paragraph 6 hereof, or within ten (10) days thereafter, the defendant-directors shall pay to Fox, in cash, by certified check, by bank check or by any combination thereof, the sums of

(a) $1,062,500; and

(b) $76,000.

If such funds or any portion thereof are not received by Fox within such 10 day period, plaintiffs' attorneys shall file an affidavit with the Court setting forth such facts, and without further notice to any party the Court shall forthwith enter judgment for the unpaid amount jointly and severally against each of the defendant-directors herein for the unpaid amount.

2. Upon receipt by Fox of the sums set forth in subparagraph 1(a) hereof, Fox shall issue to the defendant-directors, in such

proportions as they may decide among themselves, rights (hereinafter, individually or in the aggregate, referred to as the "Rights") to purchase an aggregate of 425,-000 shares (which number of shares or exercise price, as the case may be, shall only be adjusted in the event of any stock dividend, stock split, reclassification, combination or any other significant dilutive event; no such anti-dilutive adjustment shall affect the economic substance of this Stipulation) of Fox stock under the following terms and conditions:

(a) The Rights shall be exercisable at a price of $13.25 per share. In computing such exercise price, the parties have considered, among other facts, the following:

(i) The price paid by Fox to Merrick for his Fox shares, which plaintiffs contend was excessive was $9.02 per share.

(ii) The closing prices at which Fox stock has traded over the New York Stock Exchange over the past 90 days has varied between a low of $8.75 per share, and a high of $12.00 per share.

(iii) The average closing price for such stock during such period was $10.46.

(iv) The closing price as of the day preceding the execution of this Stipulation was $11.375 per share.

(b) The Rights shall not be exercisable for (i) a period of one year from the date of initial Court approval of this Stipulation, as defined in paragraph 6 hereof, or (ii) until the date of final approval of this Stipulation, as also defined in paragraph 6 hereof, whichever is later. Thereafter, the Rights shall be exercisable for a period of three years.

(c) The Rights shall be nontransferable and nonassignable, with the following exceptions:

(i) Any Rights (together with registration rights attributable thereto, described herein) acquired by defendant John L. Vogelstein shall be freely transferable or assignable to EMW Associates Incorporated, provided that the Rights shall otherwise remain subject to all the terms and conditions of this Stipulation;

(ii) Any Rights acquired hereunder may be transferred to an underwriter for purposes of making a public offering of the underlying shares one year from the date upon which such Rights first become exercisable, as provided in subparagraph 2(b) hereof;

(iii) In conformity with and subject to the Securities Act of 1933, any Rights issued by Fox pursuant to this Stipulation may be transferred at any time after they become exercisable under subparagraph 2(b) hereof to a broker-dealer for the sole purpose of having such broker-dealer exercise such Rights for the purpose of immediately selling the underlying shares other than pursuant to a registration statement, provided, however, that the Rights and the underlying shares shall not be subject to the terms of Section 3(a)(10) of the Securities Act of 1933; and

(iv) In the event of the death of any defendant-director, the Rights owned by such defendant-director shall be transferable in the normal course of the disposition of his estate, but shall otherwise remain subject to all the terms and conditions of this Stipulation.

(d) Any defendant-director to whom Rights are issued by Fox or any person or entity to whom such Rights have been transferred or assigned pursuant to the provisions of subparagraph 2(c) hereof is referred to herein as a "Holder." The Rights may be transferred among the Holders, provided that any such transfer shall be at a price not to exceed $2.50 per Right, and further provided that the Rights shall remain subject to all the terms and conditions of this Stipulation.

(e) The initial Holder of more than 50% of the Rights (including any transferee or assignee thereof pursuant to subparagraph 2(c)(i) above) shall have the following registration rights, all at the expense of such Holder as specified in subparagraph (g) hereof: Such Holder shall have the right, at any time from and after the

date on which the Rights are issued, to cause Fox to a file a registration statement covering any shares owned by it prior to the date of this Stipulation and/or any shares issued to it pursuant to exercise of the Rights (including shares owned by underwriters as contemplated by subparagraph 2(c)(ii) hereof), as the case may be. Such holder shall have the right to no more than three registration statements pursuant to this subparagraph 2(e), the number of shares to be registered pursuant to each one of which to be within the discretion of such Holder. Such Holder shall, however, not be permitted to require Fox to file any such registration statement more than once during any twelve month period. Nothing herein shall be deemed to permit exercise of the Rights prior to the time specified in subparagraph 2(b) hereof, nor shall the rights to such registration statements be deemed to expire at the end of the period during which the Rights are exercisable by their terms. In connection with any such registration statement, Fox will use its best efforts to file the same with the Securities and Exchange Commission and to have such registration statement declared effective and to keep such registration statement effective for a period of at least sixty days.

(f) The Holder of any Rights or of the underlying Shares shall have "piggyback" rights on any registration statement filed pursuant to subparagraph 2(e) above but only with respect to Shares acquired pursuant to the provisions of this Stipulation.

(g) All expenses attributable to registration of Fox shares pursuant to subparagraphs 2(c) and 2(e) hereof shall be borne pro rata by the selling shareholders making the registration and shall in no case be borne by Fox.

3. (a) Merrick hereby relinquishes his claim against Fox that, upon Fox's abandonment of the financing and production of a motion picture based upon Merrick's musical play "PROMISES, PROMISES" on January 10, 1975, Fox should have paid to Merrick the sum of Six Hundred Thousand ($600,000) Dollars as liquidated damages pursuant to the provisions of Paragraph 4(B) of the contract between them dated December 12, 1972.

(b) Upon Fox's abandonment of the "PROMISES, PROMISES" production on January 10, 1975, Merrick stated his claim that no portion of the payments made to him by Fox was subject to the "turnaround" repayment-rights provisions in Paragraph 4(G) of the aforesaid agreement dated December 12, 1972.

(c) Fox and Merrick hereby acknowledge and agree that:

(i) Fox has turnaround repayment rights to the extent of $200,000 pursuant to Paragraph 4(G) of the aforesaid agreement and that the said paragraph is extended for a period of 3 years following the expiration of the 18 month period provided in that paragraph; and

(ii) Such turnaround provisions do not apply to the balance of the payments made to Merrick upon Fox's abandonment of the production.

4. Upon final approval of this Stipulation and upon payment of the amounts provided in paragraphs 1(a) and 1(b) hereof:

(a) Fox shall execute and deliver to each of the defendant-directors in the *Seigal* and *Gehler* actions, and to all persons who were directors of Fox at any time during the period January 1, 1974 through June 4, 1974, releases in the form annexed hereto as "Exhibit A"; and

(b) Fox shall execute and deliver to Merrick a release in the form annexed hereto as "Exhibit B";

(c) Merrick shall execute and deliver to Fox a release in the form annexed hereto as "Exhibit C"; and

(d) Each of the individual defendants in the *Seigal* and *Gehler* actions, and all other persons who were directors of Fox at any time during the period January 1, 1974 through June 4, 1974, shall execute jointly a mutual release in the form annexed hereto as "Exhibit D"; such release may be executed in counterparts, all of which when taken together shall be deemed one original.

5. Upon final approval of this Stipulation, defendants' counsel shall take such steps as they deem necessary to seek the dismissal, with prejudice, of the following related actions:

(a) *Berkowitz, et al. v. Frey, et al.* (Index No. 7975/1974), now pending in the Supreme Court of the State of New York; and

(b) *Geisinger v. Straka, et al.* (Civil Action No. 4521/1974) and *Diamond v. Lewis, et al.* (Civil Action No. 4524/1974), now pending in the Delaware Chancery Court. Such steps may include, but need not necessarily be limited to, moving for summary judgment or dismissal with prejudice of said state court actions on the bases of *res judicata*, collateral estoppel and the releases executed and delivered in connection with the court-approved settlement of the *Seigal* and *Gehler* actions. Plaintiffs' counsel agree to cooperate with and assist defendants' counsel in seeking such dismissal with prejudice. The general counsel for the plaintiffs in the said state state [sic] court actions has agreed that he will support the settlement as being in the best interests of Fox and that he will consent to the dismissal with prejudice of the said state court derivative actions.

6. The term "initial Court approval of this Stipulation," as used herein, is defined to be the date on which an order and judgment approving this Stipulation shall be entered; the term "final approval of this Stipulation," as used herein, is defined to be the date when the order and judgment approving this Stipulation shall become final and no longer subject to appeal or review, whether by lapse of time or otherwise.

7. Immediately upon the execution of this Stipulation, counsel for the parties hereto shall submit this Stipulation to the Court for approval and request an order:

(a) Scheduling a hearing to be held to determine the reasonableness, adequacy and fairness of this Stipulation and to determine whether this Stipulation should be approved by this Court;

(b) Scheduling a subsequent hearing to be held to fix the amount of plaintiffs' counsel fees and expenses to be paid from the benefit derived by Fox from the settlement;

(c) Providing that any holder of record of shares of Fox common stock as at the close of business on January 31, 1977 who desires to object to the approval of this Stipulation or the entry of judgment dismissing the Complaints must file objections in writing together with any memorandum and/or affidavit in support thereof with the Court ten (10) days prior to the hearing scheduled by the Court, and show due proof of service of such objections and memorandum and/or affidavit upon each of the undersigned counsel;

(d) Providing that any present holder of record of shares of Fox common stock as at the close of business on January 31, 1977 who has filed and served written objections in accordance with the schedule set forth in subparagraph 7(c) hereof may appear in person or by counsel at the hearing scheduled by the Court for the purpose of objecting to the approval of this Stipulation or the entry of judgment in accordance therewith, but that no such shareholder shall be heard and no memoranda or affidavits shall be considered in the absence of compliance with subparagraph 7(c) hereof, and providing further that any such shareholder who does not object and who does not appear in person or by counsel shall be deemed not to be opposed to this Stipulation;

(e) Requiring Fox, at its own expense and on or before a date to be fixed by the Court, to give notice of the hearing to present shareholders of Fox by mailing by first class mail a notice in a form to be approved by the Court to all shareholders of record as their names and addresses appear on the records of Fox's transfer agent as at the close of business on January 31, 1977;

(f) Providing that such mailing shall constitute due and sufficient notice to all persons entitled to such; and

(g) Requiring Fox to file with the Court proof of mailing of such notification of the hearing.

8. If this Stipulation is approved by the Court, all parties hereto shall request that an order be entered as follows:

(a) Approving this Stipulation and adjudging the terms thereof to be fair, adequate and reasonable and directing consummation of its terms and provisions;

(b) Dismissing the Complaints against all defendants named therein on the merits and with prejudice and without costs;

(c) Upon compliance with the provisions of this Stipulation and the payment of the amounts provided herein, directing the entry of a final judgment dismissing the Complaints in accordance with subparagraph 8(b) hereof; and

(d) Reserving jurisdiction over the effectuation of this Stipulation for all purposes, including

(i) Resolution of any dispute that may arise with respect to the effectuation of any of the provisions of this Stipulation, and

(ii) Passing on the applications by the attorneys for plaintiffs in the *Seigal* and *Gehler* actions and such applications that may be made by the attorneys representing the plaintiffs in the state court derivative actions enumerated in Paragraph 5 above for fees and reimbursement of disbursements and expenses to be paid by Fox in such amount as the Court in a subsequent hearing determines to be fair and appropriate.

9. It is expressly understood that neither this Stipulation nor any proceeding hereunder shall be construed as or deemed to be evidence or an admission on the part of any of the parties hereto of any liability or wrongdoing whatsoever whether as alleged in the Complaints or otherwise; nor shall this Stipulation or any proceeding connected with it be offered or received in evidence in any other proceeding as an admission of wrongdoing on the part of any of the defendants hereto or of any liability therefor. The defendants specifically disclaim any liability alleged in the Complaints or any other liability.

10. If there is no initial Court approval of this Stipulation or final approval of this Stipulation, this Stipulation shall become null and void and of no force or effect, and this Stipulation and all negotiations and proceedings relating thereto shall be without prejudice as to the rights of any and all parties thereto, who shall be restored to their respective *status quo* existing at the time of the execution of this Stipulation, and shall not be used in any proceeding or action in this or in any other court, and nothing contained herein shall be used as an admission against interest.

11. Throughout this Stipulation, the singular shall be deemed to include the plural, and vice versa.

Dated: New York, New York
February 10, 1977

GOLD, FARRELL & MARKS

/By/ (s) Leonard M. Marks
(A Member of the Firm)
Lead Trial Counsel for Plaintiffs and Attorneys for
Plaintiffs David and Ethel Seigal
595 Madison Avenue
New York, New York 10022
(212) 935–9200

LEVY & LEVY

/By/ (s) Morris Levy
(A Member of the Firm)
Attorneys for Plaintiff Harry Gehler
233 Broadway
New York, New York 10007
(212) 962–1559

SKADDEN, ARPS, SLATE, MEAGHER & FLOM

/By/ (s) Robert W. Sweet
(A Member of the Firm)
Attorneys for the Defendant-Directors of Twentieth
Century-Fox Film Corporation, Donald N. Frey,
William T. Gossett, William R. Hearst, Jr., F.
Warren Hellman, H. Blackmer Johnson, John H.
Johnson, William C. Keefe, Ralph F. Lewis, Harry
A. MacIntyre, Malcolm A. MacIntyre, John T.
Pollock, Dennis C. Stanfill, Gordon Stulberg, Gerard A. Trautman and John L. Vogelstein
919 Third Avenue
New York, New York 10022
(212) 371–6000

REMBAR, WOLF & CURTIS

/By/ (s) Mortimer B. Wolf
(A Member of the Firm)
Attorneys for Defendant David Merrick
19 West 44th Street
New York, New York 10036
(212) 575–8500

ROSENMAN COLIN FREUND LEWIS & COHEN

/By/ (s) Joseph Zuckerman
(A Member of the Firm)
Attorneys for Defendant Twentieth Century-Fox
Film Corporation
575 Madison Avenue
New York, New York 10022
(212) 644–7000